# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| WOLF TECHNOLOGIES, INC. <br> and TRICIA TAMKIN, <br><br> Plaintiff, <br><br> v. <br><br> MORGAN CONSULTING GROUP, INC. <br> and PETER LEFFKOWITZ, <br><br> Defendants. | Case No. 5:16-cv-06110-FJG |

## DEFENDANTS' SUGGESTIONS IN OPPOSITION TO NON-PARTY JAMES D. MYERS' MOTION TO QUASH SUBPOENA TO TESTIFY AT A DEPOSTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

I. Factual Background ...................................................................................................... 1

II. Argument ....................................................................................................................... 3

   A. Morgan Seeks to Discover Jim Myers's Non-Privileged Understanding and Facts Regarding Events that Pre-Date this Lawsuit or the Anticipation of this Litigation ........... 3

   B. Myers's Testimony Is Indisputably Relevant to a Fraudulent Inducement Claim. ............. 5

   C. Myers's Reliance on The Parol Evidence Rule Fails to Take Wolftec's Best Interests Into Account................................................................................................................... 8

   D. Morgan's Motion to Disqualify Myers ................................................................................ 8

III. Conclusion ..................................................................................................................... 9

CERTIFICATE OF SERVICE ................................................................................................ 11

# TABLE OF AUTHORITIES

## Cases

*Cascone v. Niles Home for Children*
　897 F.Supp. 1263 (W.D. Mo. 1995) ....................................................................................... 4, 9

*Love v. Career Education Corporation*
　No. 4:11CV1585 JAR, 2012 WL 1684572 (E.D. Mo. May 15, 2012) ....................................... 6

*Roberts v. Shawnee Mission Ford, Inc.*
　352 F.3d 358 (8th Cir. 2003) ..................................................................................................... 6

*Roth v. Equitable Life Assur. Soc'y of the United States*
　210 S.W.3d 253 (Mo.Ct.App.2006) ........................................................................................... 6

*Shelton v. American Motors Corporation*
　805 F.2d 1323 (8th Cir. 1986) ................................................................................................... 4

*Urologic Surgeons, Inc. v. Bullock*
　117 S.W.3d 722 (Mo.Ct.App.2003) ........................................................................................... 6

## Other Authorities

Fed. R. Civ. P. 30(b)(6) ................................................................................................................ 4

## I. Factual Background

1. Morgan acknowledges that on June 11, 2012, the parties entered into a Joint Venture Agreement, the purpose of which was to promote, manage, administer, and deliver services through a recruiter training program called "eSSentials" used to teach recruiters specific advanced internet research methods for identifying job candidates.

2. The eSSentials "workbooks" produced by Wolftec show that the program consisted of numerous research methods and eSourcing techniques. Morgan disputes Myers's characterization that the "vast majority" of the program consisted of Boolean search strings and operators.

3. While Morgan disagrees with Myers's account regarding the respective behavior of the parties, Wolftec agrees that the relationship between the parties deteriorated towards the end of 2014, prompting Wolftec to initiate a "deadlock" provision of the Joint Venture Agreement. Thereafter, the parties started discussions about separating their business interests, which led to initial negotiations between Jim Myers, on behalf of Wolftec, and Jennifer Snider, on behalf of Morgan. Later, extensive negotiations took place between Jim Myers and David White, on behalf of Wolftec and Morgan, respectively.

4. Morgan acknowledges that Myers's and White's negotiations regarding Wolftec's purchase of Morgan's 30% interest in the eSSentials program, among other transactions, resulted in an Asset Purchase Agreement ("APA"), executed on June 5, 2015.

5. Pursuant to the APA, Morgan is prohibited from using "eSSentials Materials." After weeks of communications between Myers and White, the parties negotiated the following language to describe "eSSentials Materials": "any and all documents or materials designed or used

as part of the eSSentials program or any training related thereto, including, but not limited to, Class Content and the eSSistant product."

6. On August 25, 2016, Wolftec filed suit against Morgan, alleging two causes of action. Count I is a breach of contract claim for Morgan's alleged use of "eSSentials materials." And Count II is a fraudulent inducement claim based on Morgan's alleged repeated assurances that it wouldn't use "eSSentials material," which Wolftec claims were fraudulently made to induce Wolftec into signing the APA.

7. Myers's role in the pre-litigation APA negotiations places him as a custodian of key documents and information sought by Morgan in discovery, including communications with David White, Morgan's prior legal counsel.

8. Accordingly, Morgan subpoenaed Myers to produce documents responsive to enumerated requests relating to the APA and the parties' negotiations related thereto. Myers did not file a motion to quash that subpoena duces tecum. Myers did not serve any objections with the document production. Rather, on September 25, 2017, Myers responded to the subpoena by producing requested documents.

9. Morgan disputes Myers's statement that "[a]ll of the written communications between Myers and White have been produced…."[1] In a telephone conference on September 29, 2017, Myers admitted that he had not yet produced all of the responsive, non-privileged documents.[2] In particular, he stated that he still had emails that he needed to review and supplement.[3] Moreover, Morgan has not received a privilege log from Myers identifying

---

[1] Doc. 49 at 3.
[2] See Exhibit 1, Affidavit of Cheryl L. Burbach.
[3] See Exhibit 1.

2

privileged documents that are being withheld,[4] despite Morgan's initial request for such dating back to January 2017, which has been requested time and time again over the past 9 months.

10. On September 26, 2017, Morgan served on Myers a subpoena to take his deposition.

## II. Argument

Myers's Motion to Quash should be denied because Morgan is entitled to discover certain facts, including Myers's perception of the events that form the basis of the fraudulent inducement claim. Myers's testimony on these subjects that pre-date the anticipation of this lawsuit is relevant and material.

Myers has admitted that he served as the *sole* attorney for Wolftec in the pre-litigation APA negotiations.[5] Thus, he is a necessary fact witness concerning the allegations contained in Wolftec's fraudulent inducement claim. Myers will also serve as a necessary witness should the Court determine that parol evidence is admissible to interpret any ambiguities of the APA. This is because he is the only individual available to testify about communications that occurred on behalf of Wolftec with Morgan's legal counsel that resulted in the agreed-upon final rendition of the APA's "eSSentials Materials" definition.

### A. Morgan Seeks to Discover Jim Myers's Non-Privileged Understanding and Facts Regarding Events that Pre-Date this Lawsuit or the Anticipation of this Litigation

Morgan seeks Myers's testimony as it relates to the communications between Myers and White occurring over a year prior to the commencement of this litigation;** not testimony related "specifically to communication between Myers and his clients."[6] While Morgan's subpoena did

---

[4] See Exhibit 2, Myers acknowledges the incomplete production and absent privilege log in a letter to Morgan's counsel dated October 9, 2017.
[5] See Exhibit 3, April 18, 2017 letter from Dianne Smith-Misemer to James D. Myers.
[6] Doc. 49, at 6.

3

Case 5:16-cv-06110-FJG   Document 58   Filed 10/24/17   Page 6 of 14

not include a list of deposition topics (as it would with a Fed. R. Civ. P. 30(b)(6) deposition notice), it was not required to do so. Furthermore, Myers was made aware of the need and scope of his deposition as early as July 26, 2017.[7] Thus, Myers's broadly sweeping arguments are inapposite.

Regardless, Myers's reliance on *Shelton v. American Motors Corporation*[8] is misplaced because Morgan seeks testimony regarding Myers's own actions that took place before this litigation commenced and were not taken in anticipation of litigation. The Eighth Circuit has recognized that lead counsel for an opposing party is not "immune from being deposed." Myers claims that Morgan must show "(1) no other means exist to obtain information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."[9] Morgan addresses the *Shelton* limitations of necessity and relevance below.

Notably, however, this Court has recognized: "upon much reflection," the *Shelton* analysis "does not control."[10] In *Cascone*, this Court found that the deposing party had a right to opposing counsel's testimony because the deposing party was seeking (i) "information concerning [opposing counsel's] *own actions*"; (ii) those actions "were taken *before* this litigation commenced"; and (iii) they were "not in anticipation of litigation."[11]

> Key in *Shelton* was the fact that the deposing party sought information the attorney acquired only *after* the litigation began and only to prepare her client's case… [A] party shouldn't be able to use a deposition to sucker-punch the other side's quarterback or listen in on the other side's huddle.[12]

---

[7] See Exhibit 4, July 26, 2017 email from Dianne Smith-Misemer to James D. Myers.
[8] 805 F.2d 1323, 1327 (8th Cir. 1986).
[9] *Id.*
[10] *Cascone v. Niles Home for Children*, 897 F.Supp. 1263, 1267 (W.D. Mo. 1995).
[11] *Id.* (emphasis in original).
[12] *Id.*

4

The facts here are analogous to *Cascone* with respect to the type of information sought from Myers. Morgan has a right to depose Myers because Morgan seeks information concerning Myers's negotiations with Snider and White that occurred *before* Wolftec filed suit against Morgan. Those discussions occurred more than one year prior to Wolftec's commencement of this suit, and thereby were not in anticipation of litigation.[13] Any claim otherwise by Myers (or Wolftec) would act as a double-edged sword. Indeed, <u>if</u> the negotiations regarding the terms and conditions of the APA did, in fact, occur as part of Myers's preparation of this case, Morgan's affirmative defenses and proposed counterclaim against Wolftec would only be strengthened by the implication that Wolftec entered into APA negotiations and executed those negotiated terms with the intent to fraudulently induce Morgan into signing the APA and entrap Morgan in the drawn-out battle of litigation.

Accordingly, under the appropriate analysis provided in *Cascone*, Morgan is entitled to depose Myers regarding negotiation of the APA, and thus Myers's Motion to Quash should be denied.

**B.  Myers's Testimony Is Indisputably Relevant to a Fraudulent Inducement Claim.**

Myers's Motion to Quash wholly ignores Wolftec's tort claim. Morgan is entitled to discover *all* relevant facts related to the fraudulent inducement claim. Myers is a critical witness, as he has information about the alleged misrepresentations and how they could have been justifiably and reasonably relied on to induce the execution of the APA. Unlike the case relied

---

[13] Should Defendants be granted leave to add its proposed counterclaim (as requested in a pending motion), Myers' testimony would also be essential to Defendants' claims of breach of contract, fraudulent inducement to enter the contract, and the unfair competition claim. Myers communications with Snider would be relevant.

5

upon for Myers's relevancy standard, Morgan's deposition subpoena is undoubtedly anything but a "fishing expedition."[14]

The elements of fraudulent inducement are:

> (1) a false, material representation;
>
> (2) the speaker's knowledge of its falsity or his ignorance of the truth;
>
> (3) the speaker's intent that the hearer act upon the representation in a manner reasonably contemplated;
>
> (4) the hearer's ignorance of the falsity of the representation;
>
> (5) the hearer's reliance on its truth;
>
> (6) the hearer's right to rely thereon; and
>
> (7) the hearer's consequent and proximately caused injury.[15]

Considering Myers's involvement in the negotiation of the terms and conditions of the APA, he possesses unique information critical to Wolftec's fraudulent inducement claim. Myers and White communicated on behalf of their clients to reach the agreed-upon terms of the APA. Wolftec's fraudulent inducement claim revolves around those communications that resulted in the parties' agreement of the terms of the APA.

For instance, Wolftec's Complaint (and proposed Amended Complaint) merely states that Morgan "repeatedly assured" Wolftec it would not use "eSSentials materials." Myers's factual

---

[14] In *Roberts v. Albright-Roberts Chevrolet, Inc.* [sic, the case caption is *Roberts v. Shawnee Mission Ford, Inc.*], 352 F.3d 358, 361 (8th Cir. 2003), the court upheld the district court's determination that the quashed subpoena was a "fishing expedition," that was not seeking to obtain relevant evidence.

[15] *Love v. Career Education Corporation,* No. 4:11CV1585 JAR, 2012 WL 1684572, at *3 (E.D. Mo. May 15, 2012)(citing *Roth v. Equitable Life Assur. Soc'y of the United States,* 210 S.W.3d 253, 258 (Mo.Ct.App.2006); *Urologic Surgeons, Inc. v. Bullock,* 117 S.W.3d 722 (Mo.Ct.App.2003)).

6

testimony regarding which alleged repeated assurances constituted "false, material representations" is Morgan's first line of defense. Morgan needs to know these initial facts to have a complete deck of cards to work from in preparing Morgan's defenses against such a serious claim involving fraud.

Among other elements, Wolftec must prove that Morgan intended that his alleged repeated assurances would be relied upon in a reasonable manner. Here again, Myers's knowledge of what he represented his clients agreed to during his communications with White is crucial information. Morgan contends the email correspondence between Myers and White demonstrates that Myers ultimately accepted White's refusal to include certain items—one of which was specifically "Search Strings"—in exchange for a one-sided liquidated damages provision solely favoring Wolftec. Only Myers can explain what "we have a deal…" meant in that email.[16]

Myers mistakenly assumes that Morgan wishes to depose him because Morgan was "not satisfied" with the documents produced in response to his subpoena. That is only partially true. Myers' deposition is necessary to give Morgan the opportunity to discover facts that directly relate to Wolftec's claims and Morgan's defenses (and counterclaims, should the Court grant leave for Morgan to bring its counterclaim against Wolftec and amend its affirmative defenses)—including facts that cannot be gleaned from the documents and that no other witness can provide. Thus, Myer's Motion to Quash should be denied because, not only is the testimony sought wholly relevant to any claim of fraudulent inducement, but there is no other way to obtain such information.

---

[16] See Exhibit 5, MCG0001562-69, May 29-June 2, 2017 email correspondence between Myers and White. Notably, this responsive, non-privileged email correspondence has not been produced yet.

7

### C. Myers's Reliance on The Parol Evidence Rule Is Misplaced.

As Myers admits, "The issue of whether a contract is ambiguous is a question of law."[17] Therefore, his reliance on a legal issue that the court has not yet been considered is premature. Regardless, his assertion that he is "not the only person defendants can depose to obtain information regarding negotiations of the APA"[18] fails to acknowledge the relevancy of his testimony, as it relates to his representation of Wolftec. Morgan intends to call White as a witness at trial. Despite his attempt to redirect Morgan to depositions scheduled for Wolftec, Tricia Tamkin, or Peter Leffkowitz, Myers is the *only witness* who is in a position to rebut or contradict White's testimony regarding those communications between him and White.

### D. Morgan's Motion to Disqualify Myers

Morgan is contemporaneously filing its Motion to Disqualify James D. Myers at Trial.[19] The accompanying Suggestions in Support of Morgan's Motion to Disqualify James D. Myers at Trial address the relevant standards to warrant such relief.

Myers complains the deposition subpoena is "just a back-door attempt to disqualify Myers."[20] That is inaccurate. Regardless of whether the Court grants Morgan's Motion to Disqualify, and considering the appropriate legal standards for Myers's Motion to Quash, Morgan is entitled to depose Myers. Of course, this Court has warned against representing a client "at trial

---

[17] Doc. 49, at 4.
[18] Doc. 49, at 5.
[19] See Doc. 55 and 56.
[20] Doc. 49, at 6.

8

in which the lawyer is likely to be a necessary witness."[21] The *Cascone* court held that "opposing counsel at the outset has the *duty to avoid* situations where she is likely to be deposed."[22]

Nonetheless, Myers was on notice as early as November 29, 2016, that he may likely be deposed.[23] And again on April 18, 2017, Morgan's counsel advised Myers that he "may be subject to disqualification" on the basis that he is a material witness identified in Morgan's Supplemental Disclosures. his disqualification from representing Wolftec at trial was necessary.[24] Despite these notifications, Myers has continued to represent Wolftec.

### III. Conclusion

Myers has long been on notice that he is the only witness able to give meaning to his correspondence with White. Morgan is entitled to discover material, relevant facts to best prepare its defenses against Wolftec's claims. In order to do so, Myers's deposition testimony is necessary. As the *sole* counsel for Wolftec during the May to June 2015 APA negotiations, Myers has a unique understanding and knowledge of facts and events that directly relate to the claims brought against Morgan. The deposition testimony Morgan seeks is not attorney-client communication, nor does it relate to actions taken in anticipation of litigation.

Accordingly, Morgan requests the Court denies Myers's Motion to Quash Subpoena to Testify at a Deposition.

---

[21] *Cascone*, 897 F.Supp. at 1265.
[22] *Id.*
[23] See Exhibit 6, November 29, 2016 letter from Dianne Smith-Misemer to James D. Myers.
[24] See Exhibit 2; Ex. 7, Defendants', Supplemented Initial Disclosures dated December 22, 2016.

Respectfully submitted,

Dated: October 24, 2017

  */s/ Cheryl L. Burbach*
Cheryl L. Burbach (Mo. Bar 48605)
Dianne M. Smith-Misemer (Mo. Bar 51487)
C. Blair Barbieri (Mo. Bar 67941)
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
84 Corporate Woods
Overland Park, Kansas 66210
Tel.    913-647-9050
Fax    913-647-9057
cburbach@hoveywilliams.com
dsmisemer@hoveywilliams.com
bbarbieri@hoveywilliams.com

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of October, 2017, the foregoing was filed using the CM/ECF system, which sent notification of such filing to the following CM/ECF participants:

    James D. Myers
    Kathleen Kopach Woods
    Michael F. Barzee
    SHAFFER LOMBARDO SHURIN PC
    2001 Wyandotte
    Kansas City, Missouri 64108

    ATTORNEYS FOR PLAINTIFFS

    */s/ Cheryl L. Burbach*